*O’Neall, J.
The objections to the Chancellor’s decree, which have been insisted on in the argument of this case, may be arranged under the following heads.
1st. The want of parties. 2d. The construction of the clauses of the will of Thomas Cabeen deceased, under which the complainant and the defendants claim. 3d. The effect of the agreement between the complainant and Amos Tims, by which the latter agreed to pay her, annually $30 for five years. 4th. The amount to be paid to her annually. 5th. The costs.
1. Whether the legacy, in remainder, to Mary Tims, is to be considered as vested, or contingent, it is not such an interest as would jure mariti, vest in the husband. It was a mere chose in action, incapable of being reduced, either actually or constructively into possession, during the lifetime of the tenant for life. As husband, Amos Tims did not, and could not, therefore, acquire the absolule estate, or right of property in remainder, to which his wife may be entitled ; his interest is as one of the distributees of his deceased wife. The legal estate of Mary Tims at her death, vested in her administrator; the right to have it distributed between her husband and children, creates in them an equity, which in a case like the present, where an annual sum is required to be paid to preserve the remainder, makes it necessary that both the administrator, and the husband and children of Mary Tims, should be parties. The former, as the representative of the legal estate, and the latter, as the parties really in interest in Equity.
This objection, for the want of parties, ought, it is true, in strict practice, to have been taken by demurrer; this course, if it had been pursued by the defendants, would have subjected the complainant to the costs, both of the demurrer and amendment. A demurrer for the want of parties, is therefore both the more regular, and usually the more prudent course. But there can be no doubt that the Court, at any stage of a case, upon 'seeing that sufficient parties are not before it, have the right to arrest the case, and direct the bill to be amended, so as to bring in all the parties in interest. This may be done, either upon the payment of costs, or ^without costs, as the Court, in the exércise of a sound discretion, may think proper. By a sound discretion, I.understand not'a mere capricious exercise of power or will, but the exercise of a right judgment in determining which of the parties have alone been in default. If the complainant, then she ought to pay costs ; but if, on the other hand, both the complainants and the defendants have alike been in default, or if both alike have been mistaken in supposing that all parties necessary were before the Court, then the amendment ought to be without costs. In this case it appears from the answers of the defendants, as well as the bill of the complainants, that they all concurred in believing that all the parties interested in the matter in dispute, were before the Court. The objection is now made for the first time, as a shift to which *42 ingenious counsel sometimes resort, to relieve their clients from a decree which operates hardly against their interests. Under these circumstances, the complainant must have leave to amend, (without paying costs) by making the administrator of Mary Tims, deceased, and her husband, Amos Tims, parties to this suit. This preliminary question being disposed of, in such a way as to make it necessary that the case. should go back to the Circuit Court, it would seem to be unnecessary to consider the other parts of the case ; but, as it is altogether an objection of strict practice, and the parties to be made cannot vary the case, and as the other points of the ease have been fully developed and argued, and an expression of our opinion upon them may terminate the litigation, we have thought it best to consider and decide the whole case.
2. It is necessary to consider, and give construction to the two clauses-of the will of Thomas Cabeen, under which the parties claim. The 2d clause gives a negro woman Jane, to Mary Cabeen, (afterwards Tims) and the testator then qualifies the gift by saying, “allowing the first child of the said Jane (if any) to my daughter Nancy Hill, and the second (if any) to my daughter Betsy.” The 5th clause is in the following words ■“ I give and bequeath to my beloved daughter Betsy, one mulatto girl named Nan : and I allow my daughter Mary to take care of the said daughter Betsy, and at her decease, I allow my said daughter ■^•ary have *the said mulatto girl, named Nan, with her increase, if any, together with negro Jane’s second child (if any), to her and her heirs and assigns, forever.”
The negro Jane had two children, as contemplated by the testator’s will: the second one, Flora, was put in the possession of the complainant, and now has five children. Mary Cabeen married Amos Tims, and-most probably, after her marriage, never took care of the complainant. It appears, however, to have been tacitly understood by all parties, that the services of the slaves were sufficient to the comfortable maintenance of the complainant; and that no claim for any care or support was made on Mary Tims or her representatives, until the arrangement was entered into between the complainant and the father of the defendants, Amos Tims, for the delivery of Flora and her children to him, and the payment by him to her, of an annuity of $30. In the bill filed by the complainant, she only requires the defendants, then to elect whether they will abandon the remainder to their mother and her heirs, or to support her. Under these circumstances, the case will be considered as if Mary Tims had taken care of the complainant^mtil the arrangement was made for the payment of an annual sum for her support, by Amos Tims.
It will be seen by referring to the clause of the will, that the bequest of the slaves to the complainant, is in the first place absolute ; its reduction to a life estate is made to depend upon Mary taking care of her during life ; in such an event, at her death the said Mary is to take the slaves in remainder. A plain construction of the 5th clause, according to the testator’s intention, would make it assume the following- form: “I give the slaves Nan and Flora to my daughter Betsy, but if my daughter Mary shall take care of the said Betsy during her life, then at her death I give the said slaves to the said Mary and her heirs and assigns forever.”
The word “ allow,” used in this clause twice, is evidently used in two *43 meanings, neither of which is its appropriate signification. In that part of the clause in which the testator speaks of Betsy being taken care of by Mary, it is used as synonymous with “ directin the other *part, which creates the remainder in favor of Mary, it is used instead of “give.” The clause, when proper words are used to express the testator’s meaning, would read thus: “ I direct my daughter Mary to take care of said daughter Betsy, and at her decease I give to my daughter Mary,” &c. Beading the clause in this way, according to the testator’s intention, it is obvious that the direction must be complied with, or the remainder may never vest. For, to the support of the complainant, the whole property might not be sufficient, if she was left to provide for herself: and it.is perfectly plain that the testator has left her the uncontrolled disposition of it, unless her sister should take care of her. If she does, then the property, not being necessary for the support of the complainant, will remain for the legatee in remainder. “ To take care of” is equivalent to support and maintenance, as well as personal attention. — Indeed all are included under the direction “to take care of.” For one cannot be said to be taken care of, who is waited on with great care, but who is neither fed nor clothed ; nor can one be taken care of who is unable to feed herself, or put on her clothes, by placing before her food and raiment. The direction in the will to take care of the complainant, enjoins on the legatee in remainder, both personal attention to, and support of her. Upon the faithful discharge of this duty during her life, depends the legacy in remainder. It is, therefore, purely contingent, and might, if the complainant had thought proper to pursue that course, have been entirely defeated by a sale of the property for her support.
3. The agreement (as it is called) between her and Amos Tims, to give up to him Flora and her children, and receive from him an annuity of $30 for five years, cannot be sustained as a bar to her present claim. I am not disposed to say that the complainant has not sufficient mind to make a contract; for her brother, who must know her better than any other person, says she has as much understanding as common women, though but little acquainted with business. If, therefore, there was no other objection to it as a contract, I think it could not on this ground be set aside. As to this ^alleged agreement, the defendants 'must be regarded as complainants seeking a specific performance. In 2 Powell on Contracts, 221, the rule is stated to be “that every agreement, to merit the interposition of a Court of Equity in its favor, must be fair, just, reasonable, bona fide, certain in all its parts, mutual, useful, made upon a good or valuable consideration, not merely voluntary; consistent with the general policy of a well regulated society, and free from fraud, circumvention, surprise ; or at least such an agreement must, in its effect, ultimately tend to produce a just end.” According to this rule, this agreement cannot be sustained as a contract, specifically to be enforced in Equity. For it is neither Tair, just, reasonable, mutual, nor upon a good or valuable consideration. As to the complainant, it is without consideration, and is purely voluntary. For she only received, or was to receive a part of that to which she was before legally entitled. — . But regarding this agreement as it ought to be, as a voluntary arrangement, by which she agreed to accept $30 per annum, in lieu of being *44 taken care of by tlie representatives of her sister, and that it is set up as a defence to any claim which the complainant makes, for arrearages of support and maintenance, which she might otherwise have claimed under her father’s will, I think it would avail the defendants, so far as to prevent the account against them from being carried beyond the time at which the bill was filed. For it was on her part, a voluntary acceptance of the annuity of $30, as a performance of the condition of the will; and in this point of view it stands as a substitute, so long as she was willing to receive it in place of her claim under the will, and until she gave notice that she required the latter to be complied with. This arrangement being purely voluntary, and without any adequate consideration moving to her, cannot be-regarded as an agreement or a contract; it is merely evidence that the condition in the will was performed. She had the right to end the arrangement when she pleased, by giving notice to the parties bound to perform the condition. This was done, by her letter to Amos Tims in *the winter of 1829 or ’30 ; but as she did not make any claim for an allowance to be paid to her for support, until the filing of her bill, and as in it, she does not ask for past, but for present and future support and maintenance, she can only have a decree for her support and maintenance, to commence at the day on which her bill was filed. For this annual allowance, the defendants in their answer profess to be willing to be made liable ; they must pay such sum as may be due at the next Court, and secure to be paid in future annually, during the life of the complainant, such sum as may be fixed by the Commissioner’s report, as a suitable annual allowance, or be barred from any claim to the remainder in the said slaves.
4. As to the amount of $175, fixed by the Commissioner’s report, as a suitable allowance to be paid by the defendants for the complainant’s support and maintenance, we see no reason to think that it is contrary to the weight of the evidence before him. But upon a question of fact, the concurrence of the Commissioner and Chancellor is generally decisive with this Court. It would be only on very extraordinary occasions, that we should (if at all) undertake to revise their conclusion.
5. With the question of costs, wo should not be disposed to interfere. It was a matter of discretion with the Chancellor; and we cannot see that it has been improperly exercised. But as the case must go back for the purpose of making additional parties, (unless the defendants should hereafter waive the objection,) the question of costs must be reserved until the case shall be finally adjudicated by the Circuit Court.
It is ordered and decreed, that the case be remanded to the Circuit Court, and that the complainant have leave to amend her bill (without the payment of costs,) by making the administrator of Mary Tims, deceased, and Amos Tims, parties ; but if the defendants are disposed to waive the objection of the want of parties, they may do so upon filing with the Commissioner within three months, their consent to waive it. In that event, the decree of tlie Circuit Court is modified ^according to the principles contained in this opinion, and the Commissioner is directed to ascertain and report to the next Court, the sum which will then be due to the complainant for maintenance from the filing of her bill, at $175 per year, and that he cause the defendants to execute bond, with good personal security to be approved by him, conditioned for the pay *45 ment of $115, from the next Circuit Court of Equity for Chester, to the complainant, during her life.
Johnson and Harper, Js., concurred.